1996 SD 40

**Todd COWAN, Plaintiff and Appellee,**

v.

**MERVIN MEWES, INC., Defendant and Appellant.**

**MERVIN MEWES, INC., Plaintiff and Appellant,**

v.

**Todd COWAN, Defendant and Appellee.**

**Nos. 19274, 19304.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1996.

Decided April 17, 1996.

---

Gary. F. Colwill of Schmidt, Schroyer, Colwill & Moreno, P.C., Pierre, for appellee.

Patricia A. Leary Carlson of Carlson Law Office, Pierre, for appellant.

PER CURIAM.

[¶ 1] Mervin Mewes, Inc. (Mewes) appeals from a judgment which determined an implied contract existed between Mewes and Todd Cowan (Cowan). Cowan filed a notice of review challenging the court's determination that the option to renew the contract had been forfeited.

## FACTS

[¶ 2] The facts in this case were well summarized by the trial court in its memorandum decision, which was incorporated into its findings of fact and conclusions of law.

Cowan and Mewes entered into a written contract on September 1, 1990, to lease approximately 1,120 acres of farm real estate. The term of the lease was for three years commencing September 1, 1990, and terminating at the end of the crop year 1993 for the crop ground and on November 30, 1993, for the pasture. In addition, the lease contained an option to renew for an additional two years under the same terms and conditions provided that Cowan notified Mewes of the exercise of the option by August 1 "of each year prior to the September 1, possession date." The agreed rental was $13,000 per year, payable semiannually on September 1 and July 1 of each rental year. In addition, the contract stated that, "If a Horse from Todd Cowan is not mutually agreed on by both parties there is an additional Five Hundred [dollars] per year due [and] payable at the end of the lease."

Cowan made all payments required under the lease except that he did not deliver a horse or pay the additional five hundred dollars per year. On or before August 1, 1993, Cowan delivered a notice of intent to exercise the option to renew the lease. Mewes indicated that he would not renew the lease at that time. Cowan then tendered the first $6,500 installment for the 1994 lease to Mewes. The date of tender is in dispute as Cowan believes it was

September 1, 1993, and Mewes contends it was September 7, 1993. Nevertheless, Mewes refused the check and never cashed it. On about September 8 or 9, 1993, Cowan commenced planting winter wheat on the leased ground. Mewes discovered that Cowan was planting wheat and spoke with Cowan about it the same day. Cowan alleges that the parties spoke and reached an oral agreement where Cowan would lease three parcels of crop land and Mewes would retain possession of the rest of the property in the lease. Mewes, however, denies that any such agreement took place and [alleges] that he again told Cowan that there was no lease. On September 10, 1993, Mewes delivered a notice to the Hyde County ASCS office indicating that he had no lease with Cowan on the subject property.

The parties had some discussions about the wheat crop but nothing was done. The wheat crop which Cowan planted was harvested and stored pending the outcome of this matter. Cowan also did not farm a third quarter of Mewes' property [which had been included in the original lease] in the spring of 1994. He went to plant the crop and discovered that another party was already working the ground. Shortly thereafter he commenced this action.

Mewes later filed a separate action against Cowan. The two matters were consolidated and tried to the court.

[¶ 3] The court concluded that, because Cowan did not supply a horse or pay $500 per year, his notice to exercise the option to continue the lease for 1994 was invalid. However, the court went on to conclude an implied contract was formed for Cowan to plant the two quarters of winter wheat for the 1994 crop year based on the parties' conduct. The court held that Cowan was entitled to harvest the winter wheat and retain its proceeds, and was entitled to retain any ASCS payments for the 1994 crop year for the two quarters of land involved. The court also concluded that Mewes was entitled to cash rent for two quarters of land in the amount of $5,880, a figure representing $20 per acre. Mewes appeals, and Cowan has filed a notice of review.

## ISSUES

[¶ 4] **I.  Did the trial court err in concluding that the option to renew the lease was invalid because Cowan did not supply a horse or $500 per year?**

[¶ 5] Cowan argues that his option to renew the lease for two years was not conditioned on the satisfaction of the requirement in the 3–year lease that he deliver a horse or pay $500 per year.  He contends Mewes had no right to refuse to renew the lease or declare the option forfeited.  The issue is squarely whether a lessee's right to exercise an option to renew a lease is contingent on the satisfaction of all covenants and conditions of the lease agreement, particularly those concerning payment.

[¶ 6] "Interpretation of contractual provisions is a question of law.  Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination." *Commercial Trust · & Sav. Bank v. Christensen*, 535 N.W.2d 853, 856 (S.D.1995) (citations omitted).  We consider contracts as a whole and all of the provisions, including those granting an option, are examined to determine the meaning of any part.  *Id.* at 857; *Crowley v. Texaco, Inc.*, 306 N.W.2d 871 (S.D.1981).  Also, in determining the validity of an option contained in a contract and whether that option is separately enforceable, we look to whether the total consideration can be apportioned to correspond with separate consideration offered by the other party in exchange for the option.  *See Crowley*, 306 N.W.2d at 874.

[¶ 7] In *Skillman v. Lynch*, 74 S.D. 212, 213, 50 N.W.2d 641, 642 (1951), we considered an option in a lease which allowed renewal "if all the conditions are otherwise agreeable to all parties[.]"  We held the lessor could refuse to renew the lease when the lessee failed to comply with a term restricting gambling on the premises.  However, we have not previously addressed a case such as this where the lessor relies upon the lessee's default in a payment term under the original lease as the basis for refusing to honor the lessee's right to exercise an option to renew the lease.

[¶ 8] In reaching its decision, the trial court relied on a decision of the *North Dakota Supreme Court, Hieb v. Jelinek*, 497 N.W.2d 88 (N.D.1993).  In that case, the lessees did not make the final lease payment but nonetheless tried to exercise an option to renew the lease.  The North Dakota court held:

> Because the [lessees] refused to pay the rent which was due, [the lessors] were under no obligation to extend to them the right of first refusal to relet the property[.]  The primary consideration for any lease is the rent to be paid.  Because nonpayment of rent substantially undermines the basis for the agreement, it would be fundamentally unfair to require a landlord to offer a tenant a right of first refusal when rental payments are uncertain or delinquent.

> Therefore, it is commonly held that the right to exercise an option to renew a lease or the right to demand a first refusal to renew, is implicitly dependent upon the faithful performance of the conditions and covenants contained in the lease.  It is axiomatic, then, that the nonpayment of rents precludes a lessee from demanding a right of first refusal or exercising an option to renew.

*Id.* at 92 (citations omitted).  The logic of the *Hieb* decision is compelling, and is consistent with our decision in *Skillman* where we held that failure to satisfy a material lease term was sufficient justification for termination of the right to exercise an option to renew a lease.  Here, the trial court found that Cowan failed to perform the requirement of providing a horse or paying $500 per year at the conclusion of the 3–year lease and, as a result, he was not entitled to exercise the option to renew the lease despite his notice of intent to renew and tender of the required payment.

[¶ 9] Cowan argues. that the option to renew is independent of his obligation to pay rent under the lease because the lease contained no express provision stating Mewes could refuse to renew the lease if Cowan did not supply a horse or make payments in lieu thereof.  However, the lease did contain the following important provision:

DEFAULT: In the event of a default or breach of any material term of this agreement, Mewes Inc. shall have the right to immediately terminate this agreement.

The trial court found that there had been a default and the lease terminated because Cowan did not deliver a horse or pay $1,500 at the end of the lease period. Furthermore, there is nothing in the lease establishing that the option is independent of the other provisions of the agreement or that the consideration can be apportioned between the separate provisions, despite Cowan's bald assertion to the contrary. The trial court's analysis was well-reasoned and Cowan has failed to demonstrate reversible error.

[¶ 10] **II. Did the trial court err in concluding that the conduct of the parties resulted in an implied contract for the lease of the 1994 winter wheat crop land?**

[¶ 11] Mewes contends the facts do not support the trial court's conclusion that, despite the forfeiture of the option to renew the lease, an implied contract existed for Cowan to lease the land. He claims an implied contract could not exist because he advised Cowan the lease was terminated, instructed him to stop planting and advised the ASCS that the lease was terminated.

[¶ 12] Settled law provides the rule governing the existence of an implied contract.

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction.... [The] facts are viewed objectively and if a party voluntarily indulges in conduct reasonably indicating assent he may be bound even though his conduct does not truly express the state of his mind.

*Lien v. McGladrey & Pullen,* 509 N.W.2d 421, 423–24 (S.D.1993). *See* SDCL 53–1–3. The trial court concluded "the conduct of the parties, while not establishing a renewal of the lease, did in fact establish an implied

contract for two quarters of Mewes' land to be leased for the farm year 1994 by Cowan by cash rent."

[¶ 13] The conduct to which the court referred was outlined in its findings of fact:

9. On or about September 8 or 9, 1993, Cowan commenced planting winter wheat on two quarters of the lease ground.

10. Mewes discovered that Cowan was planting and spoke with Cowan about it on the same day.

11. Cowan alleges that the parties spoke and reached an oral agreement whereby Cowan would lease three parcels of crop land and Mewes would retain possession of the rest of the property in the lease.

12. Mewes denies that any such agreement took place and contends that he told Cowan there was no lease. On September 10, 1993, Mewes delivered a notice to the Hyde County ASCS office indicating that he had no lease with Cowan on the subject property. The parties had some discussions about the winter wheat crop but nothing was done.

The court also concluded "Mewes did not take any affirmative action of any kind to recover possession of the two quarters upon which Cowan planted winter wheat until June of 1994 after the commencement of this action, and at which time the crop's quality was apparent."

[¶ 14] It is evident that there was a factual dispute as to whether the parties reached an agreement after Cowan started planting. The court was persuaded by Cowan's account that the men had reached an agreement because "Cowan resumed planting the winter wheat on the two quarters that he was working on prior to the conversation[,]" and because he returned possession of the other property to Mewes. It is also obvious the trial court accorded little weight to Mewes' letter to the ASCS which simply stated "As of this date 9–10–1993 the lease on all land is terminated due to default of agreement." Apparently, the court considered this letter to be inconsistent with Mewes' actions in waiting until the crop was ready for harvest the following year and until Cowan had sued him to serve Cowan with a notice to quit and

vacate. Further, the ASCS letter was entirely consistent with the trial court's conclusion that the original lease terminated due to Cowan's default in regard to the provision relating to supplying a horse or cash payment.

[¶ 15] Although there are factual disputes, we will not reverse a trial court's findings unless they are clearly erroneous, and we are required to resolve all conflicts in the evidence in favor of the trial court's findings. *Matters v. Custer County,* 538 N.W.2d 533 (S.D.1995); *In re Estate of Elliott,* 537 N.W.2d 660 (S.D.1995). The trial court was in the best position to assess the credibility of the witnesses and the weight to be accorded their testimony, and we give due regard to its opportunity to observe the witnesses and the evidence first hand. *Estate of Elliott,* 537 N.W.2d at 662. It is apparent the court rejected Mewes' account of the conversation with Cowan on September 8 or 9. Mewes' claim that the court should have chosen his version of the facts is insufficient to demonstrate reversible error. Further, the findings of the court support its conclusion that an implied contract existed.

[¶ 16] Affirmed.

[¶ 17] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., participating.