1998 SD 49

Marvin JURRENS, Individually, and d/b/a Rushmore Marketing, Plaintiff and Appellant,

v.

LORENZ MANUFACTURING COMPANY OF BENSON, MINNESOTA, and Lorenz Manufacturing Company Of Watertown, South Dakota, Defendants and Appellees.

No. 20116.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1998.

Decided May 20, 1998.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for plaintiff and appellant.

James C. Roby and Thomas J. Linngren of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, for defendants and appellees.

KONENKAMP, Justice.

[¶ 1.] After his commission agreement expired, a salesperson continued working without a written contract. When he was terminated five years later, his firm refused to pay him commissions on pending invoices pursuant to the terms of the former written agreement. At trial, the circuit court granted a directed verdict for the firm holding that no commissions were due. Because the parties continued business without the benefit of a written contract, adhering to some of the provisions of their expired agreement but not others, should the precise terms of any implied contract be left for a jury to determine? We conclude there was a legally sufficient basis upon which a jury could find the existence of an implied contract at variance from the original agreement. We reverse and remand for trial.

## Facts

[¶ 2.] In 1986, Marvin Jurrens began working as a salaried employee for Lorenz Manufacturing Company, a farm equipment maker with divisions in Benson, Minnesota and Watertown, South Dakota. When the Company's sales representative for South Dakota left in 1988, Jurrens expressed an interest in taking the position. The Company agreed. They executed a Sales Representative Contract and Commission Schedule on May 20, 1988. With this agreement, Jurrens ended his status as an employee and became an independent contractor. He was to receive a commission based on the type of product sold, with a $400 weekly draw against earned commissions. The agreement required Jurrens to make regular calls on dealers at least every four weeks and prohibited him from selling competing products.

[¶ 3.] As initially drawn, the agreement identified South Dakota as Jurrens' sales territory, excluding only a "house account" with an implement dealer in Watertown. On February 1, 1989, the parties amended the agreement to broaden Jurrens' territory to include Nebraska. The agreement could be terminated by either party on thirty days' notice. Paragraph 5a stated that on termination:

All invoices and shipments that are outstanding at the time of termination of contract will be the responsibility of Lorenz for collection and delivery and commissions will be lost.

The term of the contract ran "from July 1, 1988 to July 1, 1989." It contained no renewal clause. When the contract expired, the parties continued doing business essentially the same as before, but without a written agreement. From time to time, however, certain changes were made: By mutual consent, the weekly draw was discontinued and, in 1990, North Dakota was added to Jurrens' sales territory. The commission schedule, however, remained unchanged.

[¶ 4.] From an infection that began in his toe a year earlier and continued to spread, Jurrens' right leg was eventually amputated below the knee in April 1994. During the time he was fighting this illness, he was unable to personally visit all his dealer contacts, but tried to stay in touch by telephone. Nevertheless, citing his inability to personally call on his customers, as required by the former agreement, Lorenz Manufacturing gave Jurrens a thirty-day notice of termination on April 8, 1994. The Company refused to pay commissions on any outstanding invoices and shipments pursuant to Paragraph 5a in the expired agreement. Jurrens brought suit. At trial, after Jurrens rested his case, the circuit court granted a directed verdict for the Company, concluding that Paragraph 5a in the original contract was still binding on the parties. Jurrens appeals asserting the trial court erred in enforcing the original agreement when after its expiration the parties operated under an implied contract with different terms.

## Standard of Review

[¶ 5.] A directed verdict motion under SDCL 15-6-50(a) challenges the legal sufficiency of the evidence. *Bauman v. Auch,* 539 N.W.2d 320, 325 (S.D.1995); *Haberer v. Rice,* 511 N.W.2d 279, 284 (S.D. 1994); *Denke v. Mamola,* 437 N.W.2d 205, 207 (S.D.1989); *Carlson v. First Nat. Bank,* 429 N.W.2d 463, 466 (S.D.1988); *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 355 (S.D.1985). In ruling on the motion, a court is not free to weigh evidence or credibility. *Denke,* 437 N.W.2d at 207. Evidence

must be viewed in a light most favorable to the nonmoving party. *Id.*; *Carlson*, 429 N.W.2d at 466; *Kreager v. Blomstrom Oil Co.*, 379 N.W.2d 307, 310 (S.D.1985). If any legally sufficient basis exists to support a verdict for the nonmoving party, the motion must be denied. *Bauman*, 539 N.W.2d at 325; *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732, 734 (S.D.1990)("If sufficient evidence exists so that reasonable minds could differ, a directed verdict is inappropriate."); *Dace v. ACF Indus., Inc.*, 722 F.2d 374, 375–76 (8thCir.1983), *on reh'g*, 728 F.2d 976 (1984); 1 S. Childress & M. Davis, *Federal Standards of Review* § 3.01, 3–5 (2d ed. 1992).*

### Analysis and Decision

■ [¶ 6.] The trial court granted the Company's motion for a directed verdict holding that, with respect to Jurren's right to receive commissions at termination, the parties continued to operate under the terms of their 1988 agreement. Contract interpretation is a function of legal reasoning, which we must undertake without deference to the trial court. *Cowan v. Mervin Mewes, Inc.*, 1996 SD 40, ¶ 6, 546 N.W.2d 104, 107; *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D.1995); *Commercial Trust & Sav. Bank v. Christensen*, 535 N.W.2d 853, 856 (S.D.1995). If a valid express contract exists, no implied contract need be inferred. *Ryken v. Blumer*, 307 N.W.2d 865, 868 (S.D.1981); *Mid–America Mktg. Corp. v. Dakota Indus., Inc.*, 281 N.W.2d 419, 425 (S.D.1979); *Thurston v. Cedric Sanders Co.*, 80 S.D. 426, 429, 125 N.W.2d 496, 498 (1963); *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985); *Siebler Heating & Air Cond. v. Jenson*, 212 Neb. 830, 326 N.W.2d 182, 184 (1982); 66 Am.Jur.2d *Restitution and Implied Contracts* § 6, at 948–49 (1973)("It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is

an express one existing. Thus, an express contract precludes the existence of a contract implied by law or a quasi-contract."). Whether a contract is termed "express" or "implied in fact," the distinction has no difference in legal effect. E. Allan Farnsworth, *Contracts* § 3.10 (2d ed. 1990).

■ [¶ 7.] Here, indisputably, the 1988 written agreement expired on July 1, 1989. "When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Martin v. Campanaro*, 156 F.2d 127, 129 (2ndCir.1946), *cert. denied*, 329 U.S. 759, 67 S.Ct. 112, 91 L.Ed. 654. The Company maintains that the express provisions of the original agreement continued to serve as the exclusive reference point for the parties' contractual relationship. Jurrens, however, believes the parties' conduct after July 1, 1989 and their mutually agreed upon changes created an implied contract, the terms of which should have been determined by the trier of fact.

[¶ 8.] Viewing the evidence in a light most favorable to Jurrens, as we must, it is clear the parties did not mutually assent to a new contract containing the same provisions as the 1988 agreement. *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 915 (9thCir.1978), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787. True, Jurrens proceeded in his capacity as an independent sales representative for the Company after July 1, 1989, but their way of doing business had changed. His territory, for example, was further expanded to encompass not only South Dakota and Nebraska, but also North Dakota. The requirement under the 1988 Agreement that he visit each dealer at least every four weeks was discontinued. With the Company's acquiescence in 1993, Jurrens conducted much of his business over the phone and, unlike the past practice, the Company's home office personnel prepared the

---

* Under revised Rule 50 of the Federal Rules of Civil Procedure, "a motion for directed verdict, or j.n.o.v. is no longer authorized. Instead, whether raised during trial, or after entry of judgment, a singly-named motion for *judgment as a matter of law* is to be the procedural vehicle for challenging a verdict (or to prevent one, heading it off sometime before submission to the jury)." Childress & Davis, *supra*, § 3.01, at 3–4—3–5. South Dakota has not revised this rule, maintaining the distinction between the two motions as noted in SDCL 15–6–50(a) & (b).

**154**

orders and mailed them to the dealers in securing sales. Most important, although the commission schedule went unchanged, the $400 weekly draw against earned commissions as provided by the 1988 agreement ended in 1990. As Jurrens argues, there was some rationale to support loss of commissions at termination in view of the $400 weekly advances which were not repayable to the Company on termination. But with the draw discontinued, the justification for loss of commissions diminished. Did this signal an intended change in the "mutuality of consideration" between the parties? J. Calamari and J. Perillo, *The Law of Contracts* § 4–12(c) (3d ed. 1987).

[¶ 9.] Neither Jurrens nor the Company adhered to all the terms of the 1988 agreement after it expired on July 1, 1989. South Dakota law recognizes the validity of implied contracts as set forth in SDCL 53–1–3 and explained in *Mathews v. Twin City Const. Co., Inc.*, 357 N.W.2d 500 (S.D.1984):

> An implied contract is one, the existence and terms of which are manifested by conduct. "Conduct" can be both acts and words. By its very nature, an implicit agreement is not as detailed as a written agreement formally negotiated.

*Id.* at 507. *See also Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 423 (S.D.1993); *Weller v. Spring Creek Resort, Inc.*, 477 N.W.2d 839, 841 (S.D.1991). It is their course of conduct that must be examined to determine the substance of any implied agreement between Jurrens and the Company. *Great West Casualty Co. v. Bergeson*, 1996 SD 73, ¶ 10, 550 N.W.2d 418, 421; *Cowan*, 1996 SD 40 at ¶ 12, 546 N.W.2d at 108; *Mathews*, 357 N.W.2d at 507; *Hunter v. Union State Bank*, 505 N.W.2d 172, 176 (Iowa 1993). "The absence of an express contract does not, however, foreclose the possibility of a contractual relationship; because the parties may, by their acts and conduct, create an implied contract." *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex.Ct.App. 1984). The existence and governing terms of any implied contract present questions of fact to be decided by a jury. *Lien*, 509 N.W.2d at 424 (citing *Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517, 520–21

(8thCir.1987)). We conclude there was a legally sufficient basis on which a jury could find in favor of Jurrens, thus a directed verdict was unwarranted.

[¶ 10.] Reversed and remanded for trial.

[¶ 11.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.