1999 SD 14

**Clarence Dale McDONOUGH a/k/a Dale McDonough Estate, Iris McDonough and Fred M. Zoss, Personal Representatives, Plaintiff and Appellant,**

v.

**Roger KAHLE, Defendant and Appellee.**

No. 20354.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1998.

Decided Feb. 3, 1999.

Casey N. Bridgman of Bridgman and Adel Wessington Springs, for plaintiff and appellant.

Carl F. Haberstick of Fosheim, Haberstick & Hutchinson Huron, for defendant and appellee.

MILLER, Chief Justice.

[¶ 1.] Iris McDonough and Fred Zoss, personal representatives of Dale McDonough's Estate, challenged Roger Kahle's ownership of certain bank accounts, certificates of deposit, and farmland. The trial court granted Kahle's motion for a directed verdict. We reverse and remand.

### FACTS

[¶ 2.] Roger Kahle and Clarence Dale McDonough were friends. McDonough asked Kahle to handle his affairs after his death. McDonough died intestate on June 18, 1995. He was survived by his estranged wife, Iris, and three sons, all of whom lived in Oregon at the time of his death.

[¶ 3.] After discovering disturbing information regarding certain certificates of deposit

and bank accounts, Iris and her nephew Fred Zoss petitioned the court to be named personal representatives of McDonough's Estate. On July 26, 1995, they were named Estate's representatives. As such, they filed suit on behalf of Estate against Kahle alleging fraud, undue influence, violation of trust, or other wrongful acts. Therein, Estate challenged the ownership of certain bank CDs and bank accounts. The CDs were listed in the names of Dale McDonough or Roger Kahle. The bank accounts listed Dale McDonough as trustee and Roger Kahle as beneficiary. The suit claimed the CDs and bank accounts were to be used to pay Estate's bills and expenses, with the excess to be distributed to the family. Kahle defended, claiming rightful ownership of the CDs and accounts.

[¶ 4.] Estate also challenged Kahle's 1987 purchase of two quarters of McDonough's farmland, alleging Kahle breached his fiduciary duty and used fraud in acquiring the land. Kahle claimed the transfer was valid.

[¶ 5.] The jury trial commenced on October 21, 1997. At the close of all the evidence, the trial court granted a directed verdict for Kahle on all claims.

[¶ 6.] In this appeal, Estate raises six issues for review; however, only one merits discussion:

[¶ 7.] Did the trial court err in granting a directed verdict?

## STANDARD OF REVIEW

[¶ 8.] The standard of review for a directed verdict is well established.

A directed verdict motion under SDCL 15–6–50(a) challenges the legal sufficiency of the evidence. *Bauman v. Auch,* 539 N.W.2d 320, 325 (S.D.1995); *Haberer v. Rice,* 511 N.W.2d 279, 284 (S.D.1994); *Denke v. Mamola,* 437 N.W.2d 205, 207 (S.D.1989); *Carlson v. First Nat'l Bank,* 429 N.W.2d 463, 466 (S.D.1988); *Sabag v. Continental South Dakota,* 374 N.W.2d

349, 355 (S.D.1985). In ruling on the motion, a court is not free to weigh evidence or credibility. *Denke,* 437 N.W.2d at 207. Evidence must be viewed in a light most favorable to the nonmoving party. *Id.*; *Carlson,* 429 N.W.2d at 466; *Kreager v. Blomstrom Oil Co.,* 379 N.W.2d 307, 310 (S.D.1985). If any legally sufficient basis exists to support a verdict for the nonmoving party, the motion must be denied. *Bauman,* 539 N.W.2d at 325; *Bankwest, Inc. v. Valentine,* 451 N.W.2d 732, 734 (S.D.1990) ("If sufficient evidence exists so that reasonable minds could differ, a directed verdict is inappropriate."); *Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375–76 (8thCir.1983), *on reh'g,* 728 F.2d 976 (8thCir.1984); 1 S. Childress & M. Davis, Federal Standards of Review § 3.01, 3–5 (2d ed 1992).

*Jurrens v. Lorenz Mfg. Co.,* 1998 SD 49, ¶ 5, 578 N.W.2d 151, 152–53 (footnote omitted). Additionally, " '[a] motion for a directed verdict should be granted only when it would be the duty of the trial court to set aside a contrary verdict as manifestly against the entire evidence because reasonable men could draw but one conclusion therefrom.' " *Stevens v. Wood Sawmill, Inc.,* 426 N.W.2d 13, 16 (S.D.1988) (quoting *Malloy v. Commonwealth Highland Theatres, Inc.,* 375 N.W.2d 631, 634 (S.D.1985) (citation omitted)).

## DECISION

[¶ 9.] **The trial court erred in granting Kahle's motion for a directed verdict.**

[¶ 10.] Estate claims the trial court improperly granted Kahle's motion for directed verdict, because sufficient evidence existed so that reasonable minds could differ. We agree.

[¶ 11.] *a. Ownership of bank certificates of deposit and bank accounts.*

[¶ 12.] Initially, we must examine the presumption involving joint accounts. *See* SDCL 29A–6–104.[1] This Court has es-

---

1. SDCL 29A–6–104 states in pertinent part:

   (1) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

   *     *     *     *     *     *

   (3) If the account is a trust account, ... on the death of the sole trustee ... any sums remaining

tablished that "[a]n account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights of survivorship to attach to it." *In re* Estate of Steed, 521 N.W.2d 675, 678 (S.D.1994) (citations omitted). To rebut this presumption, "the party seeking to negate the presumption must show with clear and convincing evidence that the original depositor or purchaser did not intend the usual rights of survivorship to attach to the joint asset, but instead intended the arrangement for [his] own convenience." *Id.* (citing *In re* Estate of Kuhn, 470 N.W.2d 248, 250 (S.D. 1991); *Kirsch v. First Nat'l Bank of Watertown*, 298 N.W.2d 71, 72 (S.D.1980); *Wagner v. Wagner*, 83 S.D. 565, 571, 163 N.W.2d 339, 342 (1968)).

[¶ 13.] When viewing the evidence in the light most favorable to Estate, it is clear that reasonable minds could differ as to McDonough's intent at the time he created the accounts. The record shows that Kahle, at McDonough's request, handled the estate of McDonough's mother, Leah. In handling her estate, Kahle paid the estate bills from a checking account which Leah and he held jointly. Thereafter, Kahle distributed the remaining assets to McDonough, even though he was the named survivor of the joint account, just as he was here. In addition, evidence was presented that McDonough similarly intended Kahle to administer his estate and then distribute the remaining assets to his family. In fact, Jeff Larson, a former attorney of Estate, testified that Kahle initially told him that McDonough had instructed Kahle to pay Estate's bills and then distribute the rest of the money to McDonough's sons.

[¶ 14.] We find this evidence clearly provides a legally sufficient basis which would support a verdict in favor of Estate. Therefore, McDonough's intent at the time he created the accounts is a question of fact and, as such, is for the jury to determine. The trial court erred in granting Kahle's motion for a directed verdict on this issue.

on deposit belong to the person or persons named as beneficiaries ... unless there is clear

[¶ 15.] *b. Farmland ownership.*

[¶ 16.] Estate also asserts that the trial court erred when it granted Kahle's motion for directed verdict on the fraud claim, finding there was insufficient evidence to establish that either actual or constructive fraud was present in the land transaction. We agree with Estate.

[¶ 17.] When determining whether a directed verdict on this issue was appropriate, we must look to the definitions of actual and constructive fraud as set forth in SDCL ch 53–4. Actual fraud is defined in SDCL 53–4–5, which provides:

Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;

(3) The suppression of that which is true by one having knowledge or belief of the fact;

(4) A promise made without any intention of performing it; or

(5) Any other act fitted to deceive.

Actual fraud is always a question of fact.

In addition, constructive fraud is defined in SDCL 53–4–6 as follows:

[¶ 18.] Constructive fraud consists:

(1) In any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

and convincing evidence of contrary intent[.]

(2) In any such act or omission as the law specifically declares to be fraudulent, without respect to actual fraud.

[¶ 19.] Moreover, while we have recognized that inadequacy of consideration alone is not enough to establish constructive fraud, it can be established if the transaction involves both inadequacy of consideration and a party with a mental weakness. *Orr v. Allen*, 73 S.D. 547, 551, 45 N.W.2d 737, 739 (1951). The party's mental weakness need not be enough to "vitiate every instrument," but enough that protection and advice are needed. *Id.* (citations omitted).

[¶ 20.] Here, the jury could reasonably infer that fraud was involved in the land transaction. The record shows that McDonough sold two quarters of farmland to Kahle, and that no agents, attorneys or appraisers were involved in the original transaction. Moreover, it is undisputed that Kahle prepared the deed and notarized the signatures himself, a violation of SDCL 18–1–12.2.[2] In addition, evidence was presented that detailed McDonough's history of alcoholism, which Estate claimed produced a mental weakness in him. The evidence also established that McDonough's family had no actual knowledge of the sale until several years after the transaction occurred. In fact, McDonough specifically forbid his nephew, Adolph Zoss, from informing Mike McDonough of the sale. The value of the land was also in dispute. Kahle paid $20,000 ($62.50 per acre) for the land. The appraiser hired by Estate determined the fair market value of the land, as of the date of purchase, to be $33,500 ($105 per acre), and Kahle's expert valued it at $24,000 ($75 per acre).

[¶ 21.] Therefore, we find that the evidence presented raised questions of fact, which should have been resolved by the jury. " 'Questions of fraud ... are generally questions of fact, which should be determined by the jury.' " *Sporleder v. VanLiere*, 1997 SD 110, ¶ 13, 569 N.W.2d 8, 11 (quoting *Moss v. Guttormson*, 1996 SD 76, ¶ 7, 551 N.W.2d 14, 16 (citations omitted)); *see also Chamberlain Livestock Auction, Inc. v. Penner*, 462 N.W.2d 479, 481 (S.D.1990) (stating the factfinder determines the existence of fraud). By granting a directed verdict on this issue, the court improperly jumped into the jury box. There were sufficient conflicts in the evidence so that reasonable minds could differ, and thus a directed verdict was inappropriately granted.

[¶ 22.] Reversed and remanded.

[¶ 23.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

2. SDCL 18–1–12.2 provides as follows: "It is a Class 1 misdemeanor for a person to affix a signature to a document as a notary public when the person has also signed the document as a party to the transaction proceeding."