#25820, #25828-aff in pt, rev in pt & rem-JKK

**2011 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DUANE C. PANKRATZ,                                    Plaintiff and Appellee,

    v.

DOUGLAS H. HOFF, MARLENE E.
HOFF and BRIAN D. HOFF,                               Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
PERKINS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN W. BASTIAN
Judge

* * * *

DAVID E. LUST
REBECCA L. MANN of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                             Attorneys for plaintiff
                                                     and appellee.


THOMAS E. BRADY
RICHARD A. PLUIMER of
Brady Pluimer PC
Spearfish, South Dakota                              Attorneys for defendants
                                                     and appellants.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 22, 2011

OPINION FILED **10/26/11**

#25820, #25828

KONENKAMP, Justice

[¶1.]     In this land contract dispute, the circuit court found ambiguity in the contracts and admitted parol evidence to determine the parties' intent. On appeal, we conclude that the contracts are enforceable as written. We affirm in part, reverse in part, and remand.

## Background

[¶2.]     Doug Hoff, his wife Marlene, and his son Brian Hoff owned 9,334.71 acres in Perkins County, South Dakota, making up the "Hoff Ranch." Of the total acreage, Doug and Marlene (the Hoffs) owned 8,200 acres, with the rest owned by Doug and Brian together, or Brian alone. After forty years of ranching, the Hoffs decided that it was time to sell and retire. In January 2006, they were at a stock show in Denver, Colorado, where they met Duane Pankratz. They informally discussed the sale of 8,000 acres of the ranch. Then, in March or April 2006, additional discussions were had in Rapid City, with Pankratz visiting the ranch. At some point thereafter, Doug, Marlene, and Pankratz met in Rapid City with attorneys Jim Hurley and Riley Wilson of Bangs, McCullen, Butler, Foye & Simmons.

[¶3.]     Near the end of the parties' negotiations, the Hoffs told Pankratz they wanted to sell all 9,334.71 acres of the ranch. Pankratz was interested, but was unable to secure the money to pay for the additional acres. Therefore, the parties arranged for the sale of the entire ranch in two transactions. Pankratz agreed to purchase 6,107.91 acres for $3,732,035, and lease the remaining 3,226.8 acres with an option to purchase for $935,325. Attorneys Hurley and Wilson drafted the

-1-

documents. On June 28, 2006, the parties executed three separate contracts. The first, entitled Real Estate Purchase Agreement, conveyed to Pankratz 6,107.91 acres of agricultural land for $3,732,035. In the second, entitled Right of First Refusal and Option, the Grantors declared that they "*own* 3,226.8 acres" and gave the "Option Holder an option to purchase *their respective interests* in the Property" for $935,325. (Emphasis added.) The third was an agricultural lease for the 3,226.8 acres.

[¶4.]        On July 19, 2007, Pankratz faxed a letter to the Hoffs giving them "written notice that I [Pankratz] am exercising my option to purchase all of the real estate as set forth on Exhibit A of the option agreement signed on June 28, 2006. The number of acres are approximately 3226.8 acres for a price of $935,325.00." After Pankratz exercised his option, an issue arose concerning Brian's ownership interest in the option land. Brian did not want to sell his interest in the ranch property, which made it impossible for the Hoffs to convey all 3,226.8 acres to Pankratz. The parties differ on what discussions they had after Pankratz exercised his option. Pankratz maintained that he did not know about Brian's ownership interest until after he exercised the option, and had he known, the transaction would have been structured differently. The Hoffs, on the other hand, asserted that Pankratz knew, or should have known, because Brian's ownership interest in the Hoff Ranch was shown in the Perkins County Equalization records, Farm Service Agency Form 156, the Conservation Reserve Program contract, and the records with the Perkins County Register of Deeds. Nonetheless, it is undisputed that after Pankratz became aware of Brian's ownership interests and Brian's refusal to sell,

Pankratz agreed to allow the Hoffs and Brian to partition the option land so that Pankratz could purchase 2,066.8 acres of the 3,226.8 acres.

[¶5.]    After the land was partitioned, the parties could not agree on a sale price. Pankratz claimed that he agreed to the partition on the condition that the purchase price for all the acres purchased by him, including the already-purchased 6,107.91 acres, would be $500 per acre, on average. The Hoffs insisted that there was no such agreement and that the price stated in the option agreement controlled. They refused to close the sale at the price Pankratz wanted.

[¶6.]    Pankratz brought suit against the Hoffs on multiple causes of action. Only the breach of contract claim is relevant to this appeal. Pankratz alleged that the Hoffs breached the option agreement when they refused to convey the option property. The Hoffs answered and counterclaimed on grounds not relevant to this appeal. During the court trial, Pankratz argued that the option agreement "must be read in conjunction with the Real Estate Purchase Agreement because the documents reflect a staged transaction to complete the purchase of the entire Ranch." Pankratz argued that the option agreement was ambiguous, requiring the admission of parol evidence to ascertain the parties' intent. The circuit court agreed. It found that, being incomplete, the two contracts should be considered together, and that parol evidence was admissible to determine the parties' intentions.

[¶7.]    Pankratz presented evidence that when the parties initially discussed selling all 9,334.71 acres, they agreed that the purchase price would be $500 per acre. Then, after the parties agreed to sell the ranch in two transactions, even

though the agreements do not state a $500 per acre price, Pankratz argued that the parties still agreed to sell the entire ranch for an average price of $500 per acre. Thus, Pankratz would purchase 6,107.91 acres at $610 per acre. Then, to realize the average $500 per acre price, Pankratz would purchase the option land, 3,226.8 acres, at $289.86 per acre, making his total per acre purchase price $500. Pankratz also presented evidence that, although he agreed to allow partition of the option land and purchase less land after Brian's ownership interest came to light, the Hoffs agreed that Pankratz would still pay the average $500 per acre price. Because the Hoffs ultimately refused to convey the partitioned option land, Pankratz asked the court to grant him specific performance, mandating that the Hoffs sell the partitioned option land, 2,066.8 acres, at $171.92 per acre.

[¶8.] The Hoffs, on the other hand, argued that the option agreement was a completely integrated document, was not ambiguous, and the court should confine its interpretation of the contract to its four corners. To the Hoffs, the option agreement clearly indicated that they only intended to convey "their respective interests" in the 3,226.8 acres. They also argued that Pankratz was, at the very least, constructively aware that Brian owned some of the option land. They averred that they did not breach the option agreement, but without waiving any defense, they alternatively asserted that if a breach occurred, Pankratz was only entitled to the price agreed to in the option agreement. Indeed, the option agreement specifically contemplated a potential sale of less land than 3,226.8 acres: "A prorated option price (price per acre) shall be used if a smaller tract is sold." Thus, the Hoffs asked the court to enforce the "prorated option price" provision.

[¶9.]        After the trial, the court issued a memorandum decision, findings of fact and conclusions of law, and a judgment.  The court ruled that the Hoffs breached the option agreement when they refused to sell Pankratz the option land.  Because the court found that the two contracts were not fully integrated, it relied on parol evidence and concluded that the parties intended that Pankratz would have the option to purchase all 3,226.8 acres of option land, and do so at an average $500 per acre price.  The court rejected the Hoffs' claim that the "prorated option price" provision applied, because "the option land and the purchased land were priced differently to allow the parties to achieve their initial objective: allowing the entire ranch to be purchased for $500 per acre."  The court found that the "remedy is complicated because after the partition, there are only 2,066.8 acres that can be awarded to [Pankratz]."  Nonetheless, the court recognized that Pankratz "does not object to receiving only 2,066.8 acres[.]"  Therefore, the court awarded Pankratz specific performance, requiring the Hoffs to transfer 2,066.8 acres to Pankratz for $355,315, which is approximately $171.92 per acre, for an average of $500 per acre.

[¶10.]        On appeal, the Hoffs assert that the court erred when it admitted parol evidence to determine the rights of the parties under the Real Estate Purchase Agreement and the Right of First Refusal and Option agreement.  By notice of review, Pankratz asks that the Hoffs be ordered to pay for the value and use of the option property during the pendency of the suit if the circuit court's order is affirmed.*

---

*        Standard of review:

(continued . . .)

## Analysis and Decision

[¶11.] The Hoffs argue that the option agreement is an unambiguous integrated contract. They assert that they did not breach the option agreement because, although it provides that the Grantors own 3,226.8 acres, the operative provisions of the contract, which state that the Grantors agree to convey "their respective interests" in the property, unambiguously indicate that the parties only intended that Pankratz purchase the interests of the Hoffs in the option land. The Hoffs further contend that Pankratz was constructively aware of Brian's ownership interest in the option land. Finally, the Hoffs assert that even if the option agreement is ambiguous and they breached the agreement, the court erred when it allowed parol evidence on the issue of what price Pankratz must pay for the option land. Because Pankratz agreed to buy a smaller tract of the option land, the Hoffs

---

(. . . continued)

> Contract interpretation is a question of law reviewable de novo. *Schulte v. Progressive Northern Ins. Co.*, 2005 S.D. 75, ¶ 5, 699 N.W.2d 437, 438 (citation omitted). "'Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination.'" *Cowan v. Mervin Mewes, Inc.*, 1996 S.D. 40, ¶ 6, 546 N.W.2d 104, 107 (quoting *Commercial Trust & Sav. Bank v. Christensen*, 535 N.W.2d 853, 856 (S.D. 1995)). "When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply." *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726 (citing *Alverson v. Northwestern Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235). "'Whether the language of a contract is ambiguous is . . . a question of law.'" *Id.* (quoting *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D. 1986)).
>
> *Ziegler Furniture and Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354.

insist that the "prorated option price" provision was implicated. Therefore, Pankratz must pay $289.86 per acre (the option contract price, $935,325, divided by the original option contract acres, 3,226.8).

[¶12.] In response, Pankratz maintains that the option agreement is not fully integrated because it cannot stand alone. He argues that the option agreement, the Real Estate Purchase Agreement, and the agricultural lease must be read together, as they "work together in a staged transaction to complete the objective of the parties — the sale and purchase of the entire Ranch." Pankratz further contends that the option agreement is ambiguous because the phrase "their respective interests" is capable of being understood in two different senses. On the one hand, it could mean that there were two grantors under the agreement and that they did not own all of the property jointly. On the other hand, it could mean that the Hoffs do not own all 3,226.8 acres, and intend only to convey the interests they respectively own. Lastly, he declares that the "prorated option price" provision is ambiguous because it does not provide an express formula, and thus the $500 per acre average must be drawn on.

[¶13.] Extrinsic evidence may be considered if (1) the written agreement is not a fully integrated document, or (2) the agreement is susceptible to two reasonable meanings, and is therefore, ambiguous. *See Kjerstad Realty, Inc. v. Bootjack Ranch, Inc.*, 2009 S.D. 93, ¶ 6, 774 N.W.2d 797, 799-800 (quoting *McCollam v. Littau*, 307 N.W.2d 144, 145 (S.D. 1981)); *see also Farmers' Elevator Co. v. Swier*, 50 S.D. 436, 443, 210 N.W. 671, 673 (1926). Here, the court concluded that the option agreement was both ambiguous and not fully integrated. Therefore,

it allowed admission of parol evidence and concluded that the parties intended a $500 average per acre price, regardless of the number of acres sold.

[¶14.]      A document is fully integrated when the parties intend it to be a complete and final expression of their agreement, and not fully integrated when the parties might naturally make additional terms or agreements as a separate agreement. *See Berg v. Hudesman*, 801 P.2d 222, 230 (Wash. 1990); *see also Neal v. Marrone*, 79 S.E.2d 239, 242 (N.C. 1953); *Renner Plumbing, Heating and Air Conditioning, Inc. v. Renner*, 303 S.E.2d 894, 898 (Va. 1983); 11 Richard A. Lord, Williston on Contracts § 33:14 (4th Ed. 1999). "However, where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement. And the rule is that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent." *Neal,* 79 S.E.2d at 242; *see also Renner,* 303 S.E.2d at 898; *Berg,* 801 P.2d at 230; *Williston on Contracts* § 33:20.

[¶15.]      From our review of these contracts, we conclude that the Real Estate Purchase Agreement and the Right of First Refusal and Option agreement are fully integrated documents: each stands alone. The Real Estate Purchase Agreement contains all the essential terms to effect the sale and transfer of 6,107.91 acres for

$3,732,035. No language in the purchase agreement indicates that it is merely a proposal or otherwise an incomplete contract. And the parties manifested their assent by signing the agreement. Thus, there is nothing in the agreement that prompts us to question its completeness. The same is true for the option agreement. No language in the option agreement supports the notion that it is anything but a complete and final expression of the parties' understanding. And, although the parties discussed selling the entire ranch for $500 per acre before executing the written agreements, their final and complete expression indicates a $610 per acre purchase price for the 6,107.91 acres and a $289.86 per acre price for 3,226.8 acres, unless less than 3,226.8 acres would be purchased, at which point the price per acre provision would be triggered. The circuit court erred when it ruled otherwise.

[¶16.] Nonetheless, the court further found that the option agreement was ambiguous. A contract is ambiguous when it is capable of more than one reasonable interpretation. *See Ziegler*, 2006 S.D. 6, ¶ 16, 709 N.W.2d at 335 (citations omitted). The option agreement provides, in relevant part, that

> WHEREAS Grantors *own* 3226.8 acres of real property and improvements which is more particularly described in Exhibit A attached hereto (the "Property"); and
>
> WHEREAS Grantors desire to grant to the Option Holder an option to purchase the portion of the Scotch Cap Ranch that is set forth on Exhibit A of this Agreement for the terms and conditions provided herein.
> . . .
> 1. Grant of Right of Option. Subject to the provisions of this Agreement, the Grantors grant to the Option Holder an option to purchase *their respective interests* in the Property, which shall be exercisable on the terms and conditions set forth herein.
> . . .

> 3. <u>Option</u>. Commencing on the date of this Agreement and at any time thereafter prior to the termination of this Agreement, the Option Holder shall have the option to purchase the *ownership interests of the Grantors* in the Property subject to the limitations listed in Section 6.  Upon exercise of this option, the purchase price to be paid shall be Nine Hundred Thirty-Five Thousand Three Hundred Twenty-Five Dollars ($935,325) (such purchase price hereinafter the "Option Purchase Price") . . . .  A prorated option price (a per acre price) shall be used if a smaller tract is sold.

(Emphasis added.)  The court found the agreement ambiguous because "their respective interests" could reasonably be interpreted to include all 3,226.8 acres or less.  Accordingly, the court used parol evidence to determine how many acres the parties meant to convey if Pankratz exercised the option.  It found that the parties intended that Pankratz would have the option to purchase all 3,226.8 acres because email and testimonial evidence showed that the Hoffs sought to sell the entire ranch, all 9,334.71 acres, to Pankratz.  And there is no evidence that the Hoffs intended to convey to Pankratz only the acres owned by them if Pankratz exercised his purchase option.  Thus, the court ruled that because the Hoffs refused to convey to Pankratz all 3,226.8 acres, the Hoffs breached the option agreement.

[¶17.]     The remedy requested by Pankratz for the breach was specific performance.  The court agreed that specific performance was the proper remedy, but recognized that because of the partition, all 3,226.8 acres could not be sold.  Nonetheless, in light of Pankratz's agreement to allow the partition and to purchase 2,066.8 acres, the court ordered that the Hoffs transfer to Pankratz 2,066.8 acres.  The court held that the property could not be transferred at the prorated option price in the option agreement because the option agreement "was drafted to allow the parties to achieve their goal of selling and purchasing the entire Ranch for $500

per acre." The court ordered the Hoffs to transfer to Pankratz 2,066.8 acres for $355,315, or $171.92 per acre.

[¶18.]     The Hoffs challenge the court's order for specific performance, asserting that the court improperly considered parol evidence to set the per acre price. They claim the option agreement unambiguously provides that when a lesser tract is sold the price will be a "prorated option price," which is a "price per acre." Because Pankratz agreed to purchase a lesser tract, the Hoffs maintain that the "prorated option price" is $289.86 per acre ($935,325 divided by 3,226.8 equals $289.86).

[¶19.]     Pankratz, on the other hand, contends that the court properly used parol evidence, not to alter the terms of the parties' agreement, but to explain and interpret the option agreement and Real Estate Purchase Agreement to reflect "the parties' intention of selling and purchasing the entire Ranch for $500 per acre in two transactions." To Pankratz, the "prorated option price" provision is ambiguous because it does not contain an express formula, and simply taking the purchase price in the agreement and dividing it by the number of acres intended to be sold under the option agreement to reach a per acre price "would not encompass the true nature of the parties' deal, purchasing and selling the entire Ranch for $500 per acre."

[¶20.]     Even if the option agreement can be deemed ambiguous, the parties nonetheless agreed to an unequivocal contractual remedy in the event a lesser amount of acreage was sold. The agreement provided: "A prorated option price (a price per acre) shall be used if a smaller tract is sold." By rejecting this provision

and declaring a different per acre price, the court improperly used extrinsic evidence to show that the parties intended some other remedy than the one provided in the contract they signed. *See Pauley v. Simonson*, 2006 S.D. 73, ¶ 8, 720 N.W.2d 665, 668.

[¶21.] No language in the option agreement suggests that the option property to be sold would be at a price connected to what Pankratz already purchased under the Real Estate Purchase Agreement. The option agreement clearly provides that the purchase price of the option property is $935,325, and if a lesser tract were sold, then the price would be prorated at a price per acre. A decision to grant specific performance must be within the framework of the parties' contract, ordering performance of the contract terms. *Free v. Free*, 936 So. 2d 699, 704 (Fla. Ct. App. 2006) (citing *Anthony James Dev., Inc. v. Balboa St. Beach Club, Inc.*, 875 So. 2d 696, 698 (Fla. Ct. App. 2004)). Therefore, the court erred when it went outside the parties' agreement to determine the price per acre for the option land, and then altered the parties' agreement to set the price per acre at $171.92. The agreement provides for the sale of 3,226.8 acres at $935,325. The price per acre at the option price is $289.86 per acre. Pankratz agreed to purchase a lesser tract of land, 2,066.8 acres, and therefore must pay $289.86 per acre, or $599,082.65. Pankratz was entitled to specific performance, but not at the price per acre he sought. We reverse and remand for the court to enter a judgment consistent with this opinion.

[¶22.] On notice of review, Pankratz seeks an order requiring the Hoffs to pay the rental value on the 2,066.8 acres for their use of the land during the pendency of this suit. As support, Pankratz cites SDCL 15-26A-28. That statute, however,

applies to appeals from judgments for which a bond has been filed under SDCL 15-26A-25. Pankratz has not claimed, nor offered evidence of, the filing of a bond. There being no other reason supporting the award of rental value on the property he has not yet purchased, we decline to further consider the issue.

[¶23.] Affirmed in part, reversed in part, and remanded.

[¶24.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices concur.

[¶25.] WILBUR, Justice did not participate.