2000 SD 131

**Larry NICKLES, as Guardian Ad Litem of Mark Nickles, a minor, Plaintiff and Appellant,**

v.

**Jay SCHILD, a minor, Defendant and Appellee.**

No. 21034.

Supreme Court of South Dakota.

Argued March 21, 2000.

Reassigned Aug. 31, 2000.

Decided Oct. 11, 2000.

Rehearing Denied Nov. 20, 2000.

C.E. Light and Michael Bornitz, Yankton, South Dakota, Attorneys for plaintiff and appellant.

Kristine L. Kreiter of Woods, Fuller, Schultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Justice (on reassignment).

[¶1.] Larry Nickles, the Guardian Ad Litem (Guardian) of Mark Nickles (Nickles) appeals the trial court's admission of expert testimony. We affirm.

## FACTS

[¶2.] On May 5, 1996, Jay Schild (Schild), Nickles and Schild's younger brother, drove to the Human Services Golf Course in Yankton, South Dakota to play golf. All three boys were minors. Both Nickles and Schild had previously received golf instructions and had been taught some golfing rules.

[¶3.] After playing five holes, Schild and Nickles proceeded to the next tee box. Schild's younger brother was still on the fifth hole green retrieving his ball, which Nickles had knocked a short distance from the green. Schild proceeded to tee up his ball at the front center of the tee box and was preparing to hit his next drive. In the meantime, Nickles moved off the tee box approximately ten feet and was facing the previous green watching Schild's brother. Schild, who had seen Nickles walk off the tee box, stepped back from his ball and took three practice swings. On the third practice swing, Schild hit Nickles in the head, fracturing his skull and permanently injuring his left eye.

[¶4.] Guardian commenced a personal injury action against Schild for damages sustained as a result of Schild's negligence and failure to exercise reasonable care in swinging his golf club. Schild denied he was negligent and claimed that Nickles was contributorily negligent and assumed the risk of his injuries. During trial, Schild called Robert Boldus (Boldus) as an expert witness. Boldus was a former member of the Professional Golfer's Association and golf professional at Fox Run Golf Course in Yankton, South Dakota. Boldus had often given golfing lessons to junior golfers while at Fox Run.

[¶5.] At trial, Boldus explained the game of golf, rules of etiquette, and what Nickles should have known following his own golf lessons from Boldus at Fox Run. Schild then asked Boldus whether "as a golf professional," he had "formed any opinions as to what had happened in this case?" Nickles immediately requested permission to briefly interrogate Boldus for purposes of objecting to his opinion. During this interrogation, the following discussion occurred:

Q: (Nickles' Attorney): Mr. Boldus, as a professional golfer, a member of PGA or based upon your experience, have you had any training in evaluating liability or standards of care required in golf liability cases?

A: (Boldus): No, I haven't.

Nickles then objected to the opinion by Boldus regarding standards of care or the ultimate issue. The trial judge overruled Nickles' objection and allowed Boldus to give his opinion:

Q: (Schild's attorney): And could you tell the jury what opinions you have come to?

A: (Boldus): In my opinion it was an accident. But one of the players moved, and when you're in your preshot routine if you move, you back away from the ball six inches to a foot or one step, and then you take your practice swings. My opinion, somehow Mark Nickles had moved in the way of the swing and got hit.

. . . .

Q: (Schild's attorney): In your opinion did [Schild] violate any standards of care?

A: (Boldus): No.

[¶6.] The jury returned a verdict in favor of Schild. Nickles appeals, raising the following issue:

Whether the trial court abused its discretion by permitting expert testimony from Boldus.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review in reviewing admissibility of expert testimony is well settled. We have often stated that:

> [w]e review questions of admissibility of an expert witness' testimony under an abuse of discretion standard. We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony. The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion.

*Maroney v. Aman,* 1997 SD 73, ¶ 33, 565 N.W.2d 70, 78 (quoting *Schaffer v. Edward D. Jones & Co.,* 1996 SD 94, ¶ 6, 552 N.W.2d 801, 805 (citations omitted)). Thus, for a reversal, Nickles must establish that no "judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *State v. Barber,* 1996 SD 96, ¶ 14, 552 N.W.2d 817, 820.

## DECISION

[¶ 8.] **Whether the trial court abused its discretion by permitting expert testimony from Boldus.**

█ [¶ 9.] The admissibility of expert testimony is governed by SDCL 19–15–2 (Rule 702). *See State·v. Edelman,* 1999 SD 52, ¶ 4, 593 N.W.2d 419, 421 (quoting *State v. Raymond,* 540 N.W.2d 407, 409 (S.D.1995)). Under SDCL 19–15–2,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by *knowledge, skill, experience, training, or education,* may testify thereto in the form of an opinion or otherwise. (emphasis added).

*See Maroney,* 1997 SD 73, ¶ 34, 565 N.W.2d at 78.

1. For example when asked if there was "a specific set of rules for golf," Boldus answered:

█ [¶ 10.] Thus, under this statute, Nickles could have questioned Boldus on whether he possessed the "knowledge, skill, experience, training or education" to answer the question of "what happened in this case." However, Nickles failed to protect his record, because his sole question to Boldus for purposes of an objection, was: "have you had any *training* in evaluating liability or standards of care required in golf liability cases?" (emphasis added). Nickles failed to ask Boldus whether he possessed or lacked the "knowledge, skill, experience or education" by which he obtained the expertise to answer Schild's question of "what happened in this case." Under SDCL 19–15–2, an expert is not limited to testifying only upon those areas in which he or she has received formal training. Rather, when giving an opinion, an expert is allowed to draw upon all the knowledge, skill, or experience that he or she has accumulated. *See Friendship Heights Assoc. v. Koubek,* 785 F.2d 1154, 1159 (4th Cir.1986) (noting that "the use of the disjunctive indicates that a witness may be qualified as an expert on any one of the five listed grounds."); *Hammond v. Int'l Harvester Co.,* 691 F.2d 646, 653 (3rd Cir.1982) (stating that "an individual need possess no special academic credentials to serve as an expert witness.").

[¶ 11.] Moreover, while Boldus may not have had any formal classroom "training" in the applicable liability standards, it is clear Boldus was no novice at the game of golf. He was a former member of the PGA and a golf professional at Fox Run Golf Course in Yankton. While at Fox Run, he had often given golf lessons to junior golfers, which included golf etiquette and safety. He had even previously given golf lessons to Nickles. By any of these methods of acquiring the appropriate expertise or combination thereof, he could have qualified himself as an expert to testify as to "what happened." [1]

> The United States Golf Association in conjunction with the Royal and Ancient Golf Club have established what we consider to be the rules of golf and they publish a book

[¶ 12.] It is quite clear from the testimony of Boldus and his vitae that he did have an opinion on the standards of care required in golf and the expertise to give such an opinion. The following testimony regarding the standard of care applicable to the game of golf was elicited from Boldus during direct testimony:

Q: When someone has addressed the ball and stepped back and they're doing their practice swings, what is the person's duty when they're doing those practice swings?

A: Well, basically there's nothing stated that says that you have to look around. You should be, when you begin your preshot routine, prior to taking your practice swings you should look and kind of [get] an idea where people are at so they are out of your way so you can take a swing. Once you begin your practice swings I think it's a duty of the other person to stay out of the way.

Q: So once, right before you start your preshot routine is when you have the duty to check what's going around?

A: Yes.

Q: And then as you start your preshot routine then it's the duty of those around you to become aware that that's what you're going to do, to watch?

A: Yes.

When asked whether he had formed any opinions as to what had happened in this case, Boldus replied:

In my opinion it was an accident. But one of the players moved and when you're in your preshot routine, if you move, you back away from the ball six inches to a foot or one step, and then you take your practice swings. My opinion, somehow Mark Nickles had moved in the way of the swing and got hit.

Boldus merely described, in his opinion, "what happened in this case" and that Schild's actions did not violate any standard of care concerning the game of golf.[2] He did not invade the province of the jury as Nickles suggests. Unlike the experts in *Robbins v. Buntrock,*[3] 1996 SD 84, 550 N.W.2d 422 and *Zens v. Harrison,*[4] 538 N.W.2d 794 (S.D.1995), Boldus did not testify as to the ultimate issue of negligence. In fact, Boldus did not discuss the issue of liability at all until he was asked upon cross-examination, "but one party is liable, aren't they?" Boldus responded: "I wouldn't –yah– I don't know about liable, but somebody [is responsible for that]." At that point any error was invited by Nickles.

[¶ 13.] Nickles' objection as to the qualifications of Boldus goes in part to formal training concerning the issue of ultimate liability. The ultimate liability of one of the parties is not the same as standard of care. One can violate a standard of care and still not be held liable. There could be further potential questions of contributory negligence, assumption of the risk, financial responsibility of a minor and/or his parents, questions of duty to supervise a

---

yearly that explains the rules. It covers how to play the game. There is an area in there on etiquette. But that's who publishes the book.

2. To provide a factual basis for his opinion, Boldus had read the depositions of Jay Schild, Mark Nickles and Mark Schild. Boldus had also sat through the trial and listened to the witnesses including Jay Schild, Mark Schild and Mark Nickles who testified prior to his testimony.

3. In *Buntrock,* a police officer was asked to " 'explain to the jury why [Buntrock] was

negligent, and how that negligence caused this accident[.]' " 1996 SD 84, ¶ 8, 550 N.W.2d at 425 (alterations in original). That testimony was held to be inadmissible by the trial court. On appeal we found no abuse of discretion.

4. In *Zens,* the trial court would not allow an expert on roofing safety to testify on "whether Harrison was 'negligent' in his instruction and supervision of the workplace." 538 N.W.2d at 795. The trial court's decision was affirmed on appeal under an abuse of discretion standard of review.

minor and the like, all of which can have a decisive effect on "liability" and which clearly are outside the expertise of a golf pro and his knowledge of golf standards of care. In this case the issues of contributory negligence and assumption of the risk were raised by Schild. Boldus did not testify as to any of these issues, his testimony was limited to describing the standard of care for the game of golf.

[¶ 14.] Nickles argues that this Court should set aside the jury's verdict upon the rationale that we are faced with the trial court's allowance of expert witness testimony regarding the violation of the standards of care in the game of golf after the expert admitted that there was no standard of care. That is not what Boldus said. He only testified in response to a question from Nickles that he had no "training in evaluating liability or standards of care required in golf liability cases." Authority from other jurisdictions makes it very clear that there is a standard of care in golf and that experts can be used to inform the jury of that standard. Other jurisdictions have allowed an expert opinion on golfing etiquette, rules, and customs because they are not "of such common knowledge that a lay juror can form as intelligent and accurate [an] opinion on the subject as can an expert witness." *Thurston Metals & Supply Co. v. Taylor,* 230 Va. 475, 339 S.E.2d 538, 542 (1986). *See also* Boyd J. Peterson, Annotation, *Liability to One Struck By Golf Club,* 63 A.L.R.4th 221, 228 (stating that "[g]olf custom and etiquette may be important in showing the propriety of the swing, as well as other matters subject to such rules, and although not necessary, such rules may be more credible if presented by an expert witness."). The trial court properly instructed the jury on this point.

[¶ 15.] The jury was also instructed that it was not bound by the opinion of Boldus in determining questions of fact. The court instructed the jury that it could disregard an expert's opinion if other evidence in the case outweighed the opinion.

Boldus did not declare how he felt the jury should rule. Boldus offered his opinion as to "what happened in this case" and then applied the rules of golf as to the standard of care. The jury was free to give whatever weight to his opinion it determined appropriate, by completely disregarding the opinion of Boldus, or by endorsing it. It is apparent that the jury chose to accept it.

[¶ 16.] Nickles had the opportunity to call his own expert and chose not to do so. He also had a chance to thoroughly cross-examine Boldus and to point out to the jury any defects or weaknesses in his testimony. Thus, any complaint by Nickles goes to the weight of the evidence rather than its admissibility. *Estate of Dokken,* 2000 SD 9, ¶ 41, 604 N.W.2d 487, 499.

[¶ 17.] For the foregoing reasons we hold that the trial court did not abuse its discretion in allowing the testimony of Boldus. We affirm.

[¶ 18.] MILLER, Chief Justice and KONENKAMP, Justice, concur.

[¶ 19.] SABERS and AMUNDSON, Justices, dissent.

[¶ 20.] Justice Sabers had disqualified himself; said disqualification was waived by all counsel and parties.

SABERS, Justice (dissenting).

[¶ 21.] I dissent.

[¶ 22.] I write specially to point out that the majority opinion misses the point – not once, but several times.

[¶ 23.] Whether Boldus was qualified as an expert witness is immaterial. The point is that under the pretense of being an expert witness – Boldus cannot testify as a fact witness. He was not present at the scene. He does not know what happened. Only fact witnesses can testify – "as to what happened?"

[¶ 24.] Therefore, under these circumstances, it was totally improper for Boldus to testify to his opinion "as to what hap-

pened in this case." Therefore, we should reverse and remand for a new trial.

[¶ 25.] I also join the dissent of Justice Amundson.

AMUNDSON, Justice (dissenting).

[¶ 26.] The admissibility of expert testimony is governed by SDCL 19–15–2 (Rule 702). *See State v. Edelman*, 1999 SD 52, ¶ 6, 593 N.W.2d 419, 421 (quoting *State v. Raymond*, 540 N.W.2d 407, 409 (S.D. 1995)). Under SDCL 19–15–2,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*See Maroney*, 1997 SD 73, ¶ 34, 565 N.W.2d at 78.

[¶ 27.] In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993), the United States Supreme Court established specific standards for admission of expert scientific testimony. This Court followed *Daubert* in *State v. Hofer*, 512 N.W.2d 482, 484 (S.D.1994) when we held that a trial judge must ensure that an expert's testimony rests on both "a reliable foundation and is relevant to the task at hand." The trial judge must also "make the initial decision on whether the testimony will assist the trier of fact." *Schaffer*, 1996 SD 94, ¶ 8, 552 N.W.2d at 805 (citing *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657, 670 (1993)). The United States Supreme Court recently expanded its *Daubert* gate-keeping decision to be applicable to " 'technical' and 'other specialized' " expert testimony, in addition to the testimony of scientific experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S.

137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238, 249 (1999) (citing FedREvid 702). *See also Estate of Dokken*, 2000 SD 9, ¶ 51, 604 N.W.2d 487, 500 (Amundson, J., concurring specially) (quoting *Kumho* as expanding the *Daubert* gate-keeping function). This Court recognized in *Kuper v. Lincoln–Union Electric Co.*, 1996 SD 145, ¶ 41, 557 N.W.2d 748, 760, that "when the trial court is ruling on the admissibility of an expert opinion, the trial court needs to exercise its gatekeeping function" to determine that the opinion has a reliable foundation and is relevant to the case at hand.

[¶ 28.] Nickles argues that the trial court abused its discretion in its role as "gatekeeper" [5] by permitting Boldus to testify as to what he "perceived to be applicable standards of care for golf course conduct by both Nickles and Schilds."

[¶ 29.] Other jurisdictions have allowed an expert opinion on golfing etiquette, rules, and customs because they are "not of such common knowledge that a lay juror could form an intelligent and accurate opinion as an expert could." *Stephenson v. Redd*, 1990 WL 751302, at *2 (Va. Cir. Ct.1990) (citing *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 339 S.E.2d 538, 542 (1986)). *See also* Boyd J. Peterson, Annotation, *Liability to One Struck By Golf Club*, 63 A.L.R.4th 221, 228 (1988) (stating that "[g]olf custom and etiquette may be important in showing the propriety of the swing, as well as other matters subject to such rules, and although not necessary, such rules may be more credible if presented by an expert witness").

[¶ 30.] While this Court has never been confronted with expert testimony regarding a golf club accident, it is clear there was no error to allow expert golfer to testify as to the rules, etiquette, and customs of golf to assist the jury in understanding the issues and deciding the case. In the present case, however, Boldus not only testified as to golf rules, etiquette and

---

**5.** Schild briefly mentions in a footnote in his brief that Nickles did not raise the *Daubert* gatekeeping issue before the trial court.

customs, he also provided his opinion as to what he believed happened and concluded that there was a violation of a standard of care but failed to establish what standards control the determination of liability in a golfing incident.

[¶ 31.] In *Robbins v. Buntrock,* 1996 SD 84, 550 N.W.2d 422, this Court was faced with whether the opinion testimony from a police officer who investigated the motorcycle/automobile accident between Robbins and Buntrock was inadmissible. At trial, Robbins wanted Officer Sambo to " 'explain to the jury why [Buntrock] was negligent, and how that negligence caused this accident[.]' " *Id.* ¶ 8, 550 N.W.2d at 425. In holding the testimony inadmissible, we stated:

> Trial courts possess broad discretion in ruling on the qualifications of experts and admissibility of their testimony. . . . Although SDCL 19–15–4 (Rule 704) has been revised, allowing witnesses to testify on ultimate issues, opinions must still help the trier of fact to understand the evidence or determine issues of fact. Resolving negligence questions is an elemental jury function and opinions couched purely in terms of negligence may confuse and misdirect, rather than assist the jury.

*Id.* (internal citations omitted).

[¶ 32.] In *Zens v. Harrison,* 538 N.W.2d 794 (S.D.1995), Zens brought suit against Harrison after falling off Harrison's roof while assisting him in reshingling. At trial, Zens called Steve Pelzl as an expert on roofing and roofing safety. *Id.* Pelzl testified that Harrison inadequately instructed and supervised Zens. *Id.* at 795. The trial court ultimately disallowed Pelzl from responding to Zens' question of "whether Harrison was 'negligent' in his instruction and supervision of the workplace." *Id.* In affirming the trial court's disallowance of Pelzl's testimony, we held:

> In 1993 SDCL 19–15–4 (Rule 704) was amended to adopt verbatim the federal rule and abolish the ultimate issue rule. . . .
>
> . . . .
>
> Thus, even with the abolition of the ultimate issue rule, certain expert opinions may be excluded as intrusive. "With respect to negligence actions, an opinion phrased in terms of negligence itself, involving not only the formulation of a legal standard by the witness but also one substantially immune to exploration, seems calculated to confuse or mislead rather than assist the trier."
>
> . . . .
>
> "The law permits expert opinion testimony because the expert can draw inferences beyond the capability of lay jurors." Determining negligence has always been the jury's function.

*Id.* at 795–96 (internal citations omitted).

[¶ 33.] In the present case, we are not faced with the trial court's disallowance of an expert's testimony. On the contrary, we are faced with the trial court's allowance of expert witness testimony regarding the violation of the standards of care in the game of golf after said witness admitted there was no such standard of care. While Boldus' testimony regarding golf etiquette and customs may have been beneficial to the jurors, an opinion as to a violation of an unknown standard of care went too far. Based upon the prior testimony of Boldus that no standard existed, what standard was supposed to have been violated? The answer to that is a mystery. We have often stated determining negligence, contributory negligence and assumption of the risk are within the province of the jury. *See Bland v. Davison County,* 1997 SD 92, ¶ 27, 566 N.W.2d 452, 460; *Gerlach v. Ethan Lumber Ass'n,* 478 N.W.2d 828, 830 (S.D.1991). To allow the admission of this speculative and conjectural opinion would shift the responsibility of determining the negligence in this golf case from the jury to the expert witness. This is a classic example of intrusion by an expert in order to mislead the jury. Thus,

the trial court abused its discretion in admitting Boldus' opinion regarding the violation of a phantom standard.

[¶ 34.] I would reverse and remand for a new trial.