#25281, #25297-a-GAS

**2010 SD 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FALYN REINFELD,                              Plaintiff and Appellee,

v.

H.L. HUTCHESON,                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

\* \* \* \*

CLINT L. SARGENT
WILLIAM E. BLEWETT of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota

and

NICHOLE CARPER
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                             and appellee.


JENNIFER L. WOLLMAN of
Woods, Fuller, Shultz
 & Smith, PC
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellant.

\* \* \* \*

ARGUED MARCH 23, 2010

OPINION FILED **05/26/10**

SEVERSON, Justice

[¶1.]	Falyn Reinfeld (Reinfeld) brought this lawsuit against H.L. Hutcheson (Hutcheson) for negligence in connection with an automobile accident. The trial court granted Reinfeld's motion for a new trial on the basis that the jury's award of damages for past and future medical expenses, but not pain and suffering, was inadequate and insufficient under the evidence presented at trial. Hutcheson appeals. We affirm.

## BACKGROUND

[¶2.]	On December 9, 2004, Reinfeld and Hutcheson were involved in an automobile accident at the intersection of Dakota Avenue and 26th Street in Sioux Falls, South Dakota. Hutcheson stopped at a stop sign on Dakota Avenue, waited to cross 26th Street, and proceeded south through the intersection when another motorist waved him through. Hutcheson's view of eastbound traffic on 26th Street was obstructed by vehicles in the westbound lane. Reinfeld was traveling east on 26th Street. Hutcheson struck Reinfeld's vehicle as Reinfeld entered the intersection. Reinfeld gripped her steering wheel to brace for impact and hit her head on the driver's side window. Neither driver reported any injuries to the officer who responded to the scene of the accident.

[¶3.]	Reinfeld began experiencing headaches and pain in her neck and shoulders within hours of the accident. Reinfeld saw Dr. Richard Plummer the day after the accident. Dr. Plummer imposed work and lifting restrictions and prescribed physical therapy and pain medications. An MRI conducted on January 7, 2005, revealed disk bulging at C5-C6 with no significant nerve impingement.

Reinfeld's condition failed to improve, and Dr. Plummer referred Reinfeld to Drs. Jerry Blow and Steven Guse. Drs. Blow and Guse treated Reinfeld using pain medications, physical therapy, trigger point injections, and neuromuscular electrical stimulation. On March 30, 2005, Dr. Guse determined that Reinfeld had reached maximum medical improvement. Dr. Guse assigned Reinfeld a 5% permanent whole-person impairment rating and imposed a permanent overhead lifting restriction of no more than 40 pounds. Despite having reached maximum medical improvement, Reinfeld continued to receive medical treatments from Dr. Guse and chiropractic care from Dr. Bruce Johnson.

[¶4.]        In September 2007, Reinfeld brought this lawsuit against Hutcheson for negligence in connection with the accident. Prior to trial, Hutcheson admitted that he was negligent, but disputed the cause, nature, and extent of Reinfeld's injuries. The case proceeded to trial to determine causation and damages. By special verdict, the jury found that Hutcheson's negligence was the legal cause of Reinfeld's injuries and awarded Reinfeld $18,791.63 in past medical expenses and $11,054.30 in future chiropractic care expenses. The jury awarded no damages for past disability, future disability, past pain and suffering, future pain and suffering, lost wages, or lost earning capacity. Reinfeld moved for a new trial on the basis that the jury's award of damages for past and future medical expenses, but not pain and suffering, was inadequate and insufficient under the evidence presented at trial. The trial court granted Reinfeld's motion for a new trial. Hutcheson appeals.

## STANDARD OF REVIEW

[¶5.]    "If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial."  Waldner v. Berglund, 2008 SD 75, ¶11, 754 NW2d 832, 835 (citations omitted).  "A motion for a new trial is addressed to the sound discretion of the trial court; we will not overturn the court's ruling unless it appears affirmatively from the record [that] there has been an abuse of discretion."  Morrison v. Mineral Palace Ltd. P'ship, 1998 SD 33, ¶7, 576 NW2d 869, 870 (citations omitted).  "Additionally, this [C]ourt has consistently stated that more deference is given to the trial court's grant of a new trial than its denial of one."  Id. (quoting Tunender v. Minnaert, 1997 SD 62, ¶9, 563 NW2d 849, 851).  "This is because orders allowing new trials 'are not conclusive or decisive of any rights or issues.  They merely open the way for a reinvestigation of the entire case upon its facts and merits.'"  Id. (quoting Jensen v. Miller, 80 SD 384, 389, 124 NW2d 394, 396 (1963)).

## ANALYSIS AND DECISION

### Appeal #25281

[¶6.]    **1.    Whether the trial court abused its discretion by granting Reinfeld's motion for a new trial.**

[¶7.]    The trial court relied upon SDCL 15-6-59(a) in granting Reinfeld's motion for a new trial.  That statute provides in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
> . . .
> (5)    Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

> (6) Insufficiency of the evidence to justify the verdict or other decision or that is against law.

SDCL 15-6-59(a).

[¶8.] A new trial should not be granted merely because the trial court believes the verdict is smaller than it should be. Stoltz v. Stonecypher, 336 NW2d 654, 657 (SD 1983). "The jury's verdict should not be set aside except in those extreme cases where it is the result of passion or prejudice or where the jury has palpably mistaken the rules of law by which damages in a particular case are to be measured." *Waldner*, 2008 SD 75, ¶14, 754 NW2d at 836 (quoting Itzen v. Wilsey, 440 NW2d 312, 313-14 (SD 1989) (citing *Stoltz*, 336 NW2d at 657; SDCL 15-6-59(a)(5))). If the jury's verdict "can be explained with reference to the evidence," it should be affirmed. *Id.* (quoting *Itzen*, 400 NW2d at 314).

[¶9.] This Court first considered the validity of an award of damages for medical expenses, but not pain and suffering, in *Gould v. Mans*, 82 SD 574, 152 NW2d 92 (1967). In that case, after hearing all the evidence, the jury returned a general verdict for the precise amount of Gould's alleged medical, hospital, physical therapy, and transportation expenses. Gould moved for a new trial on the basis that the jury's verdict was inadequate and insufficient under the evidence presented at trial because it awarded no damages for pain and suffering. The trial court granted Gould's motion for a new trial. This Court affirmed, holding that "[i]n view of the evidence regarding the extent, nature, and causation of plaintiff's injuries and mental condition, the trial court could do no wrong in either granting or refusing a new trial on the ground of inadequate damages." *Id.* at 578, 152 NW2d at 94. "It was a matter resting within [the trial judge's] broad discretion[.]" *Id.*

[¶10.] In *Gould*, this Court recognized that "the apparent weight of authority [ ] regards a verdict in a personal injury action for the amount of medical expenses to be inadequate and invalid without an additional award for pain and suffering." *Id.* at 576, 152 NW2d at 93 (citation omitted). "[A] jury cannot award recovery for medical expenses and without reason deny recovery for the very injuries necessitating the medical expenses." *Id.* Yet, this Court was "not willing to adopt an inflexible rule [that] would in effect render every verdict approximating a plaintiff's medical expenses inadequate and invalid as a matter of law." *Id.* at 577. This Court left open the possibility that such verdicts could be sustained on various grounds. *Id.*

[¶11.] In *Morrison v. Mineral Palace Ltd. P'ship*, this Court again considered the validity of an award of damages for medical expenses but not pain and suffering. 1998 SD 33, 576 NW2d 869. By special verdict, the jury awarded Morrison the exact amounts she claimed for medical expenses and lost wages, but awarded nothing for pain and suffering or permanent impairment. In affirming the trial court's grant of a new trial, this Court held that "there [was] no construction that [could] properly sustain the verdict" and that "[e]vidence of uncontested damages was ignored by the jury." *Id.* ¶12, 576 NW2d at 872. Because Morrison received 100% of her claimed damages for medical expenses and lost earnings, this Court rejected Mineral Palace's argument that the jury reduced its award of damages due to Morrison's contributory negligence. *Id.* Had the jury done so, the awards for pain and suffering and permanent impairment would have been reduced, not completely eliminated. *Id.*

[¶12.]     *Waldner v. Berglund* is the most recent case to consider the issue. 2008 SD 75, 754 NW2d 832. Waldner moved for a new trial when the jury returned a general verdict awarding her the precise amount of medical expenses she incurred within days after the automobile accident. The trial court denied Waldner's motion for a new trial. This Court affirmed, holding that the case turned on witness credibility. *Id.* ¶19, 754 NW2d at 836. "Waldner's reasons for seeking treatment following the accident were based in large part on her subjective descriptions of pain." *Id.* ¶15. The jury apparently felt that Waldner's subsequent medical treatments and any pain she experienced were not related to the accident, did not exist, or were not necessary. *Id.* ¶13, 754 NW2d at 835. It is important to note that the verdict in *Waldner* was general, and therefore, this Court could not say conclusively what it represented. *Id.* ¶15 n*, 754 NW2d at 836 n* (citing Andreson v. Black Hills Power & Light Co., 1997 SD 12, ¶14, 559 NW2d 886, 889-90).

[¶13.]     Hutcheson argues that "[t]he issue of damages in a personal injury action is peculiarly a question for the jury." *Itzen*, 440 NW2d at 313 (citation omitted). Hutcheson contends that because Reinfeld's credibility was challenged during cross-examination, the jury was free to disbelieve or reject her subjective descriptions of pain. *See Waldner,* 2008 SD 75, ¶13, 754 NW2d at 835; *Andreson,* 1997 SD 12, ¶12, 559 NW2d at 889; *Itzen*, 440 NW2d at 314; *Stoltz*, 336 NW2d at 658. The jury was not bound to accept Reinfeld's testimony as absolutely true if Hutcheson weakened the evidence to some degree on cross-examination, but introduced no evidence to rebut it. Kusser v. Feller, 453 NW2d 619, 621 (SD 1990) (citing Grubbs v. Foremost Ins. Co., Grand Rapids, 82 SD 98, 102, 141 NW2d 777,

779 (1966)). *See* Howe v. Farmers Coop. Creamery of Madison, 81 SD 207, 210, 132 NW2d 844, 845 (1965) ("The persuasiveness of evidence may be overcome even though uncontroverted by direct evidence."). Hutcheson thus concludes that the jury was free to deny Reinfeld recovery for pain and suffering.

[¶14.]	However, no evidence was presented at trial to contradict the fact that Reinfeld's injuries and medical treatments were painful. Each of Reinfeld's treating physicians, Drs. Plummer, Blow, Guse, and Johnson, found indications of neck and back pain. Reinfeld also underwent several trigger point injections in which muscle relaxers were injected into abnormally tense muscles. Dr. Guse testified that trigger point injections are a "very painful procedure." Even Hutcheson's experts testified that Reinfeld experienced some pain and suffering as a result of the accident. Hutcheson presented the testimony of Dr. David Hoversten, who conducted an independent medical examination of Reinfeld on October 4, 2005, at the request of Reinfeld's former employer, Express Communications. Dr. Hoversten testified:

> [C]ertainly Falyn has pain and troubles in her neck. She has stiffness, she has pain in her neck, and she has some headaches. And I believe they are there. . . . I cannot say she doesn't have pain. I cannot say that she doesn't have troubles.

Consistent with each of Reinfeld's treating physicians, Dr. Hoversten believed that Reinfeld's condition was chronic and that she would experience pain throughout her life.

[¶15.]	Furthermore, the jury awarded Reinfeld damages for medical expenses incurred in the treatment of pain. Dr. Plummer referred Reinfeld to Dr. Guse in February 2005. After nearly a month of treatment with Dr. Guse, Reinfeld was still

experiencing regular headaches and fairly constant pain. On March 30, 2005, Dr. Guse determined that Reinfeld had reached maximum medical improvement. According to Dr. Johnson, maximum medical improvement means that "the patient has stabilized and reached a plateau in her healing process." Medical treatment is no longer intended to improve the patient's physical condition, but is meant only to alleviate pain. Reinfeld continued treatment with Drs. Guse and Johnson upon reaching maximum medical improvement, and the jury awarded Reinfeld the medical expenses related to that treatment, including the expenses of future chiropractic care. The award of these past and future medical expenses is inconsistent with no award of damages for pain and suffering. Had the jury disbelieved or rejected Reinfeld's subjective descriptions of pain, it would not have awarded medical expenses incurred in an effort to treat that pain.

[¶16.] The form of the verdict is also relevant to the resolution of this case. When the jury awards damages by general verdict, "[t]here is no concrete evidence demonstrating [that] pain and suffering were not considered by the jury[.]" *Andreson*, 1997 SD 12, ¶11, 559 NW2d at 889. *See Waldner*, 2008 SD 75, ¶15 n*, 754 NW2d at 836 n*; *Morrison*, 1998 SD 33, ¶¶10-12, 576 NW2d at 871-72; Freeman v. Berg, 482 NW2d 32, 35 (SD 1992). "[M]ere speculation remains as to the categorization of damages." *Andreson*, 1997 SD 12, ¶9, 559 NW2d at 888. The jury may have rejected or reduced awards for lost wages, lost earning capacity, and permanent disability, and yet still made an award for pain and suffering. There is no need for speculation, however, when the jury awards damages by special verdict as in this case. *Morrison*, 1998 SD 33, ¶11, 576 NW2d at 871.

[¶17.]     Hutcheson argues the jury's verdict was consistent with the verdict form and must therefore stand.  The verdict form explained: "Defendant disputes the nature and extent of Plaintiff's injuries.  You must determine what damages, *if any*, the Plaintiff shall recover." (Emphasis added.)  Paragraph 10 of the verdict form provided: "Consider the nature, extent, duration, the pain and suffering, mental anguish and loss of capacity of the enjoyment of life she experienced, *if any*, up to the present." (Emphasis added.)  Paragraph 11 provided for the award of future pain and suffering and contained language nearly identical to that in Paragraph 10.  By use of the phrase "if any," Hutcheson contends that the verdict form permitted the jury to award damages for medical expenses, but not pain and suffering.

[¶18.]     The trial court concluded that "[t]here is no construction that can properly sustain the verdict" in this case.  *See Morrison*, 1998 SD 33, ¶12, 576 NW2d at 872.  An award of damages for medical expenses, but not pain and suffering, may be sustained if there is evidence that the plaintiff had a pre-existing injury or if the plaintiff's injuries were not related to the defendant's negligence.  *See Waldner*, 2008 SD 75, ¶13, 754 NW2d at 835; *Morrison*, 1998 SD 33, ¶¶14-15; 576 NW2d at 872-73; *Itzen*, 440 NW2d at 314; *Gould*, 82 SD at 577-78, 152 NW2d at 93-94.  Hutcheson therefore elicited testimony from Dr. Johnson that Reinfeld received chiropractic treatment six times between 2000 and 2004 for low back pain, neck pain, and headaches.  Nevertheless, the jury specifically found that Hutcheson's negligence was the legal cause of Reinfeld's injuries and awarded Reinfeld the exact amounts she claimed for past and future medical expenses.  The

jury explicitly rejected the notion that Reinfeld's injuries were not related to the accident. Had the jury found that Reinfeld's injuries were not related to the accident, the awards of damages for medical expenses and pain and suffering both would have been reduced. The award for pain and suffering would not have been completely eliminated.

[¶19.] Not only did the jury disregard evidence of uncontested damages, but the jury's verdict was insufficient under the evidence presented at trial. On the facts of this case, the jury could not conclude that Hutcheson's negligence was the legal cause of Reinfeld's injuries, award Reinfeld the precise amount of damages she claimed for past and future medical expenses, including those expenses incurred in an effort to treat her pain, and yet deny recovery for the pain and suffering related to those injuries. Ultimately, the trial court did not abuse its discretion when it granted Reinfeld's motion for a new trial.

[¶20.] **2. Whether the trial court abused its discretion by entering an order for a new trial on all damages claims.**

[¶21.] Hutcheson argues that the second trial on damages should be limited to Reinfeld's claim of damages for pain and suffering. SDCL 15-6-59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues[.]" A partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Prod. Co., Inc. v. Champlin Ref. Co., 283 US 494, 500, 51 SCt 513, 515, 75 LEd 1188 (1931) (citations omitted). *See Morrison*, 1998 SD 33, ¶17, 576 NW2d at 873 (quoting Maybee v. Jacobs Motor Co., Inc., 519 NW2d 341, 345 (SD 1994) (citation omitted)). If

multiple issues are so interwoven that they cannot be submitted to the jury independently of one another without confusion and uncertainty, a partial new trial would amount to a denial of a fair trial, and there should be a new trial on all the issues. *Id*. (quoting *Maybee*, 519 NW2d at 345 (citing *Gasoline Prod. Co.*, 283 US at 500, 51 SCt at 515)).

[¶22.]    Hutcheson argues that because the jury has rendered a lawful and consistent verdict on Reinfeld's claims of damages for past and future disability, lost wages, and lost earning capacity, a second trial can properly be limited to Reinfeld's claim of damages for pain and suffering. Hutcheson cites *Byre v. Wieczorek*, wherein this Court instructed:

> The guiding principal [to be applied by a trial court disposing of a motion for a new trial] is that although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and the parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown.

88 SD 185, 200, 217 NW2d 151, 159 (1974) (quoting 58 AmJur2d, *New Trial*, § 25). Hutcheson contends that a new trial on all claims of damages would give Reinfeld "a second bite at the apple."

[¶23.]    The trial court's decision to limit the issues to be considered in the new trial will not be overturned "unless it appears affirmatively from the record [that] there has been an abuse of discretion." *Morrison*, 1998 SD 33, ¶¶7, 18, 576 NW2d at 870, 873 (citations omitted) (holding that the trial court abused its discretion in limiting the grant of a new trial). Reinfeld's claims of damages for past and future disability, lost wages, and lost earning capacity are so intertwined with her claim of damages for pain and suffering "that a fair, new trial is not possible without a trial

on all the issues." *See id.* ¶18, 576 NW2d at 873. *See also* Pexa v. Clark, 85 SD 37, 176 NW2d 497 (1970) (granting a new trial to plaintiff on both causes of action because the jury's award of damages for medical expenses and pain and suffering, but not wrongful death, was inconsistent and reflected a compromise). The 5% permanent whole-person impairment rating and permanent work restrictions Dr. Guse assigned Reinfeld were based at least in part on the pain Reinfeld was experiencing as a result of the injuries she sustained in the accident. The trial court therefore did not abuse its discretion by entering an order for a new trial on all damages claims.

[¶24.] **3. Whether the trial court abused its discretion by allowing a vocational rehabilitation consultant to testify to Reinfeld's total lost earning capacity.**

[¶25.] Hutcheson argues that the trial court should not have allowed a vocational rehabilitation consultant to testify to Reinfeld's total lost earning capacity. Reinfeld earned a degree in satellite communications from Mitchell Technical Institute. In December 2004, Reinfeld was working at Express Communications as an installer of satellite dishes. Reinfeld's job was physically demanding, requiring that she carry a 40 pound tool belt and 35 to 40 pound satellite dishes up a ladder to customers' roofs. Reinfeld claimed she could no longer obtain work in the satellite communications field as a result of the injuries she sustained in the accident and was therefore entitled to monetary damages for lost wages and lost earning capacity. In support of her claim of damages for lost earning capacity, Reinfeld presented the testimony of Rick Ostrander, a vocational rehabilitation consultant. Hutcheson objected to Ostrander's calculation of

Reinfeld's total lost earning capacity, arguing that only an economic expert could project the value of her lost earning capacity into the future. The trial court overruled Hutcheson's objection and allowed the testimony at trial.

[¶26.] SDCL 19-15-2 (Rule 702) sets forth the general requirements for the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

[¶27.] "Trial courts enjoy broad discretion in ruling on the admissibility of expert opinions." Garland v. Rossknecht, 2001 SD 42, ¶9, 624 NW2d 700, 702 (citations omitted). "[W]hen dealing with expert opinion, the court must fulfill a gatekeeping function, ensuring that the [expert] opinion meets the prerequisites of relevance and reliability before admission." Id. ¶10 (citing Daubert v. Merrell Dow Pharm., Inc., 509 US 579, 597, 113 SCt 2786, 2799, 125 LEd2d 469, 485 (1993)) (additional citations omitted). "[A] trial judge must ensure that an expert's testimony rests on both 'a reliable foundation and is relevant to the task at hand.'" Rogen v. Monson, 2000 SD 51, ¶13, 609 NW2d 456, 459 (quoting State v. Hofer, 512 NW2d 482, 484 (SD 1994) (quoting Daubert, 509 US at 597, 113 SCt at 2799)). "A fundamental baseline for reliability is that experts are limited to offering opinions within their expertise." Garland, 2001 SD 42, ¶11, 624 NW2d at 703 (citation omitted).

[¶28.] Ostrander calculated Reinfeld's lost earning capacity by comparing her earning capacity in the satellite communications field prior to the accident to her

present earning capacity. Using data from the United States Department of Labor, the South Dakota Department of Labor, and Mitchell Technical Institute, Ostrander calculated the average salary in the satellite communications field. Ostrander then compared that salary to the average salary of occupations for which Reinfeld was reasonably qualified with her injuries. Ostrander determined that the injuries Reinfeld sustained in the accident substantially diminished her earning capacity. He determined that Reinfeld's average annualized loss of earning capacity was $16,785 and that her expected remaining work life was approximately 39 years. Ostrander multiplied those values and calculated Reinfeld's total lost earning capacity to be between $654,000 and $666,000. Ostrander continued his testimony by suggesting that an award of $98,500 for training in another field would be a more conservative measure of damages.

[¶29.] Hutcheson argues that a vocational rehabilitation consultant is not qualified to project the value of lost earning capacity into the future. The verdict form specifically instructed the jury to reduce any award of future damages to present value and provided a calculations table to do so. Ostrander calculated Reinfeld's total lost earning capacity, but the trial court left the task of assigning the present cash value to that award of damages to the jury. Ostrander offered opinions within his expertise, and the trial court did not err by allowing him to testify to Reinfeld's total lost earning capacity. We caution, however, that testimony of this nature from a vocational rehabilitation consultant is not necessarily admissible in all cases. As with other expert opinions, a trial court must exercise its "gatekeeping function, ensuring that the opinion meets the

prerequisites of relevance and reliability before admission." *See id.* ¶10, 624 NW2d at 702 (citing *Daubert*, 509 US at 597, 113 SCt at 2799).

*Appeal #25297*

[¶30.] By notice of review, Reinfeld presents one issue for this Court's consideration.

[¶31.] **1.** **Whether the trial court abused its discretion by declining to instruct the jury that the terms "impairment" and "disability" are synonymous.**

[¶32.] During deliberations, the jury posed a question to the trial court, asking whether the terms "impairment" and "disability" are synonymous. While several physicians testified at trial that Reinfeld suffered permanent "impairment," the verdict form instructed the jury to award the reasonable value of any "disability" Reinfeld suffered in the past or would suffer in the future. Reinfeld asked the trial court to instruct the jury that the terms "disability" and "impairment" are synonymous. The trial court refused to so instruct the jury. Because we affirm the trial court's grant of a new trial, we need not address whether the trial court's failure to instruct the jury on this issue was error.

[¶33.] Affirmed.

[¶34.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶35.] SABERS, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.